Bossier Parish Clerk of Court
Filed Sep 16, 2019 2:27 PM
Chelsea Poole
Deputy Clerk of Court
C-160474
3

**BAKER HUGHES**

### EMPLOYEE AGREEMENT

This Agreement is entered into by and between _Matthew O'Neal_ ("Employee") and Baker Hughes Oilfield Operations, Inc. ("Company"). In consideration of the disclosure of valuable Confidential Information to Employee by Company, the employment or continued employment of Employee by Company, the salary and wages to be paid to Employee, and other good and valuable consideration, Employee and Company agree as follows:

1. **INVENTIONS, DISCOVERIES, COPYRIGHTS AND COMPANY PROPERTY.** All written materials, records, data, and other documents prepared or obtained by Employee in the course of Employee's employment by the Company (whether during business hours and whether on the Company's premises or otherwise) are the Company's property. Additionally, all information, ideas, concepts, improvements, discoveries, and inventions that are conceived, made, researched, developed, or acquired by Employee individually or in conjunction with others during Employee's employment (whether during business hours and whether on the Company's premises or otherwise) which relate to the Company business, products, or services, are the Company's sole and exclusive property. All memoranda, notes, records, files, correspondence, drawings, manuals, models, specifications, computer programs, maps, and all other documents, data, or materials of any type embodying such information, ideas, concepts, research and development, improvements, discoveries, and inventions are the Company's property. Employee further understands AND AGREES THAT Company is the author of, and owns all copyrights to, and works prepared by Employee within the scope of Employees employment. Employee agrees to disclose all inventions, designs, copyrights, trade secrets, and other idea and concepts which relate to Companies business, products, or services, promptly, completely, and in writing to the Company. At the termination of Employee's employment with the Company for any reason, Employee shall return all of the Company's documents, data, or other Company property to the Company and shall not retain, copy, or distribute any such information to any third person.

2. **CONFIDENTIALITY, TRADE SECRETS, PROPRITARY INFORMATION, AND SPECIALIZED TRAINING.** Employee acknowledges that the oilfield services business of the Company and its parent companies, affiliates and subsidiaries is highly competitive. Employee will be employed in a position of special trust and confidence, in which Employee will have additional responsibility and opportunities. To perform these responsibilities, the Company will provide Employee with access to Confidential, Trade Secret, and Proprietary Information relating to the business of the Company and its parent companies, affiliates and subsidiaries to which Employee was not given access prior to the date this Agreement is signed by Employee (the "Effective Date"). In addition, Employee will be responsible for developing and protecting new Confidential Information. The Company may also provide to Employee specialized training. "Confidential Information" means and includes the Company's, its parent companies', its affiliates' and its subsidiaries' confidential and/or proprietary information and/or trade secrets that have been developed or used and/or will be developed and that cannot be obtained readily by third parties from outside sources. Confidential Information includes, by way of example and without limitation, the following: information regarding customers, employees, vendors, contractors, and the industry not generally known to the public; strategies, methods, books, records, and documents; technical information concerning products, equipment, services, and processes; procurement plans and procedures, and pricing techniques; the names of and other information concerning customers, investors, and business affiliates (such as contact name, service provided, pricing for that customer, amount of services used, credit and financial data, and/or other information relating to the Company's relationship with that customer); pricing strategies and price curves; plans and strategies for divestitures, mergers, expansion or acquisitions; budgets; customer lists; research and development projects and results; financial and sales data; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; service strategies, prospective customers' names and marks; grids and maps; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party or received by the Company; technologies and methods; training methods and training processes; organizational structure; salaries of personnel; payment amounts or rates paid to consultants or other service providers; and other such confidential or proprietary information. Employee acknowledges that this Confidential Information constitutes a valuable, special, and unique asset used by the Company and its divisions in their business to obtain a competitive advantage over their competitors who do not have access to such Confidential Information. Employee further acknowledges that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company and its divisions in maintaining their competitive position. Employee also will have access to, or knowledge of, Confidential Information of third parties, such as actual and potential customers, suppliers, partners, joint venturers, investors, financing sources and the like, of the Company and its divisions. Employee agrees that Employee will not, at any



EXHIBIT 1

time during or after Employee's employment with the Company, make any unauthorized disclosure of any Confidential Information or specialized training of the Company or its divisions, or make any use thereof except in the carrying out of the Employee's employment responsibilities hereunder. Employee also agrees to preserve and protect the confidentiality of third party Confidential Information to the same extent, and on the same basis, as the Company's Confidential Information. Employee shall not store electronic data of the Company, including but not limited to Confidential Information, on any electronic storage device that is not owned by the Company without prior written consent of the Company, except as necessary for the performance of Employee's job responsibilities. If Employee does store electronic data on an electronic storage device that is not owned by the Company, with or without consent of the Company, in addition to all other available remedies, Employee hereby agrees to surrender within three (3) business days following demand by the Company any and all such electronic storage devices to the Company for inspection, data retrieval, and data removal.

3. **NON-COMPETITION.** Ancillary to Employee's agreement not to disclose Confidential Information and the content of any specialized training, to protect the Confidential Information described above, and in consideration for Employee's receiving access to Confidential Information, specialized training, and any other appropriate consideration, the Company and Employee agree to the following non-competition provision. During the Restricted Period, Employee shall not render Restricted Services in the Restricted Region to a Competitor of the Company or its Divisions. The term "Restricted Period" shall mean that period of twelve (12) months following the voluntary termination of Employee's employment with the Company, or Employee's termination by the Company for cause, as documented in Employee's termination letter, and which may include poor performance, policy violations or other reasons consistent with the Company Policy. The term "Restricted Region" shall mean the territory(ies) or geographic area(s) for which employee was responsible according to the duties and responsibilities assigned by the Company during any portion of the twelve (12) month period immediately prior to the date of Employee's termination. Additionally, if Employee's position is in the nature of research, development, or manufacturing of the Company's products, the Restricted Region shall include those territory(ies) or geographic area(s) in which the Company's products or services with respect to which Employee is responsible for the research, development, or manufacturing are sold or offered for sale or in which the Company has plans, of which Employee has been made aware prior to the date of termination, to sell or offer for sale products or services which would be within the job responsibilities of Employee. The term "Restricted Services" shall mean (1) services substantially similar to any job, task, function, or responsibility that Employee performed for the Company in the preceding 12-month period and (2) any job, task, function or responsibility that Employee supervised for the Company in the preceding 12-month period. The term "Competitor of the Company" shall mean any person or entity that provides or is preparing to provide products or services that compete with the products or services of the Company in the aspects of the business of drilling, formation evaluation, completion, or production in which the Company is then doing business, has plans known to employee to engage in business in the future, or has engaged in business in the preceding 12-month period. Employee understands that the foregoing restrictions may limit Employee's ability to engage in certain businesses in the geographic region and during the period provided for above, but acknowledges that these restrictions are necessary to protect the Confidential Information the Company has provided to Employee. Employee agrees that this provision defining the scope of activities constituting prohibited competition with the Company is narrow and reasonable because there are sufficient other employment opportunities in similar and other industries that are not in competition with the Company. Thus, this restriction on Employee's ability to compete does not prevent Employee from using and offering the skills that Employee possessed prior to receiving Confidential Information, specialized training, and knowledge from the Company.

4. **NON-SOLICITATION OF CUSTOMERS.** For a period of eighteen (18) months following the termination of employment for any reason, Employee will not call on, service, solicit, or accept competing business from customers of the Company or its divisions with whom Employee, within the previous eighteen (18) months, (i) had or made contact, or (ii) had access to information and files regarding. These restrictions are limited by geography to the specific places, addresses, or locations where a customer is present and available for soliciting or servicing.

5. **NON-SOLICITATION OF EMPLOYEES.** During Employee's employment, and for a period of twenty four (24) months following the termination of employment for any reason, Employee will not, either directly or indirectly, call on, solicit, or induce any other employee or officer of the Company or its divisions to terminate his or her employment with the Company, and will not assist any other person or entity in such a solicitation.

6. **EXIGENT CIRCUMSTANCES: REQUEST FOR WAIVER.** In the event Employee subsequently finds these restrictions significantly impede future employment, Employee shall submit a written request to the

Company for a waiver of the restrictions. Such request for a waiver shall include the reason for the significant impediment, name and address of the future employer and the location, position and duties of the proposed employment. Company will respond to any such request within ten (10) business days. Company may elect to grant the waiver at its sole discretion and with such conditions and restrictions as it deems reasonable.

7. **EXTENSION OF NON-COMPETE PERIOD.** If Employee is found to have breached Paragraphs 3, 4, or 5, of this Agreement, the terms therein will be extended by the period of time the employee was in breach.

8. **MAXIMUM PROTECTION.** Nothing in this Agreement is intended to reduce the Company's protections or Employee's obligations under (1) any pre-existing agreement between Employee and the Company, (2) the common law, or (3) any applicable state or federal statute. In the event that Employee and the Company have any pre-existing enforceable agreements that provide greater protection for the Company by having more restrictive terms relating to nondisclosure, non-competition, non-solicitation of customers, or non-solicitation of employees, Employee agrees that, in addition to the provisions contained in this Agreement, s/he shall continue to comply with and be bound by those pre-existing terms, if any, which are hereby incorporated by reference.

9. **PERFECTION OF INTERESTS.** Employee agrees to assist at any time, either during Employee's employment or after employment is terminated, in the preparation, execution, and delivery of any documents which may be necessary or desirable, in the Company's opinion, to give effect to the provisions of this Agreement, and to more perfectly confirm the rights, titles and interests of the Company within the scope and intent of this Agreement; including, but not limited to, disclosures, patent applications, copyright registration or maskwork registration applications or papers required or helpful to obtain patents, copyright registrations, or maskwork registrations in this or in other countries and in connection with such other proceedings as may be necessary to vest title thereto to the Company, its successors or assigns.

10. **PUBLICITY.** Employee authorizes Company to use, and to authorize others to use, recordings of Employee's voice and photographs of Employee, including any photograph or photographic reproduction, still or moving, and any videotape or live television transmission, in advertisements, brochures, training materials and other audio or visual material. Such authorization by Employee shall include the right to use any such recordings of Employee's voice and photographs of Employee following termination of Employee's employment by Company which are in the possession of Company at the time of such termination.

11. **ASSIGNABILITY.** Employee understands and agrees that he may be transferred to, or requested to perform services for, a parent or subsidiary of Company, or another business entity having an affiliation with Company. Accordingly, the term "Company" as used in this Agreement shall include any such parent, subsidiary or other affiliated business entity. This Agreement may be assigned by the Company (or its successor) to any successors in business and is binding on Employee's heirs and legal representatives.

12. **AT-WILL EMPLOYMENT.** Nothing in this Agreement is intended to change, nor shall be construed as changing Employee's status as an at-will employee. Employee further understands and agrees that Employee's obligations under this Agreement shall survive termination of employment for any reason.

13. **SAVINGS CLAUSE.** To the extent that any provision of this Agreement is judicially determined to be invalid, unlawful or unenforceable, that provision shall be modified to the extent such a court in its discretion deems necessary in order to bring such provision into compliance with the laws of this state and of the United States as applicable. The remainder of the Agreement shall continue in full force and effect, provided that such modification does not render this Agreement void for lack of consideration by a party, or frustrate the purpose set out hereby.

14. **MODIFICATION, CAPTIONS AND CONSTRUCTION.** This Agreement may not be modified in any respect by any verbal statement, representation, or agreement made by any employee of the Company, or by a written document, unless signed by an authorized officer of the Company. The captions contained in this Agreement are provided for convenience of reference only and shall not be deemed to constitute a part of this Agreement. This Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party who drafted the Agreement.

15. **NONWAIVER.** No failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder, or under law, shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance. All waivers by either party hereto must be contained in a written

instrument signed by the party to be charged and, in the case of the Company, by an authorized officer of the Company as such has previously been defined.

16. **CHOICE OF LAW.** This Agreement is deemed to have been made in Houston, Texas, and the laws of the State of Texas, exclusive of the choice of law provisions, shall govern this Agreement without regard to the place of execution or the place of performance of this Agreement.

17. **ARBITRATION.** Either Employee or Company may elect to submit any controversy or claim arising out of or relating to Employee's employment, including but not limited to termination and the manner or reason thereof, or the breach of this Agreement, and claims arising under federal or state law for discrimination based on age, sex, race, disability, national origin, or other impermissible basis, to binding arbitration for final settlement in accordance with the rules of the American Arbitration Association. Judgment upon an arbitral award may be entered in any court having jurisdiction thereof. Either Employee or Company without any restriction and without limiting their right to arbitration may seek equitable remedies, including injunctive relief and specific performance, in any court of competent jurisdiction concerning disputes involving paragraphs 1, 2, 3, 4, and 5. Venue for arbitration shall be Houston, Texas, and the arbitral tribunal shall use the laws of the State of Texas, exclusive of the choice of law provisions, in construing and interpreting the terms of this Agreement.

18. **INJUNCTIVE RELIEF.** As to any noncompliance with or breach of paragraphs 1, 2, 3, 4, or 5 by Employee, Employee acknowledges that monetary relief will not be an adequate remedy and agrees that the Company shall be entitled to injunctive relief or other similar remedy by any court of competent jurisdiction. Employee further agrees to the entry of such relief at any point prior to or during the arbitration, and that Company may seek such relief from any court of competent jurisdiction whether or not the arbitration process has started and regardless of the stage of any arbitration proceeding. Company may also seek such relief from the arbitrator(s) if, in its sole discretion, it chooses to do so.

| Employee | Company |
|---|---|
| Signature: *Matthew D. O'Neal* | Signature: *KK* |
| Name: Matthew D. O'Neal | Name: *KK* |
| Date: 5/11/2011 | Date: 4/24/11 |

**NOTICE TO EMPLOYEE:** This Agreement affects important rights. <u>DO NOT</u> sign it unless you have read it carefully, and are satisfied that you understand it completely.