# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

**MATTHEW  O'NEAL**  |  **CASE NO.: 5:19-CV-01350**

**v.**  |  **CHIEF JUDGE S. MAURICE HICKS, JR.**

**BAKER HUGHES OILFIELD OPERATIONS, LLC AND BAKER PETROLITE, LLC**  |  **MAGISTRATE JUDGE HAYES**

## PETROTECH SOLUTIONS, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO BAKER HUGHES' MOTION TO STAY AND COMPEL ARBITRATION

**WIENER, WEISS & MADISON**
A Professional Corporation

Marjorie L. Frazier  Bar Roll No. 32991
Frank Spruiell  Bar Roll No. 1611
Reid A. Jones  Bar Roll No. 34611

330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:  (318) 226-9100
Facsimile:  (318) 424-5128

**ATTORNEYS FOR PETROTECH SOLUTIONS, LLC**

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................ i

Table of Authorities .......................................................................................... ii

Argument & Authorities .....................................................................................2

   1.  A Mandatory Stay Is Not Appropriate ..........................................................2

      a.   There is no authority permitting Section 3 to be applied against a non-signatory .......2

      b.   The Waste Management factors do not apply............................................5

      c.   Even were the Court to apply the *Waste Management* factors, Baker Hughes would still not be entitled to a mandatory stay ........................................6

         1.  Same operative facts ..................................................................8

         2.  Inherently inseparable ...............................................................9

         3.  Critical impact on the Arbitration ............................................10

      d.   PetroTech's position is consistent with the text of, and policy behind, The FAA ...........................................................................................11

  2.  The Court Should Not Enter A Discretionary Stay ........................................12

Conclusion........................................................................................................13

Certificate of Service .......................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333; 131 S. Ct. 1740, 179 L.Ed.2d 742 (2011) .......................................................... 11

*Bridas S.A.P.I.C. et al. v. Gov't of Turkmenistan*,
  345 F.3d 347 (5th Cir. 2003).................................................................................................... 1

*Broussard v. First Tower Loan, LLC*,
  150 F.Supp.3d 709 (E.D. La.2015) ........................................................................................... 4

*Broussard v. First Tower Loan, LLC*,
  2016 WL 879995 (E.D. La. Mar. 8, 2016)................................................................................ 4

CA-548-XR,
  2006 WL 8434130 (W.D. Tex. Aug. 17, 2006) .................................................................. 3, 13

*Cargill Ferrous Int'l v. M/V Anatoli*,
  935 F. Supp. 833 (E.D. La.1996) ...................................................................................... 11, 12

*Complaint of Hornbeck Offshore (1984) Corp.*,
  981 F.2d 752 (5th Cir.1993)...................................................................................................... 2

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ..................................................... 11, 12

*Jones Walker, LLP v. Petaquilla Minerals, Ltd.*,
  2015 WL 3772670 (E.D. La. June 17, 2015) ...................................................................... 2, 3

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ................................................................................................................ 12

*Matter of Talbott Big Foot, Inc.*,
  887 F.2d 611 (5th Cir.1989)...................................................................................................... 2

*Matthews v. Priority Energy Servs., LLC*,
  6:15-CV-448-RWS-KNM, 2016 WL 7633990 (E.D. Tex. Dec. 2, 2016) ........................... 9, 12

*Mendez v. Puerto Rican International Companies, Inc.*,
  553 F.3d 709 (3d Cir. 2009).............................................................................................. 4, 11

*Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*,
   859 F.Supp. 669 (S.D.N.Y.1994) ............................................................................... 11

*Peak Pipe & Supply, LLC v. UMW Oilfield (L) International LTD*,
   3:18-CV-410-L, 2018 WL 6177268 (N.D. Tex. Nov. 27, 2018) ................................ 3

*Smith v. Transp. Workers Union of Am., AFL–CIO Air Transp. Local 556*,
   374 F.3d 372 (5th Cir.2004)....................................................................................... 11

*Waste Management., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
   372 F.3d 339 (5th Cir. 2004) ........................................................................... 5, 6, 9, 10

## **<u>Statutes</u>**

9 U.S.C. § 3 .............................................................................................................*passim*

**MAY IT PLEASE THE COURT**:

Pursuant to the Court's July 2, 2020 Minute Entry [Rec. Doc. 46], Counterclaim Defendant PetroTech Solutions, LLC ("PetroTech") submits this Supplemental Memorandum in Opposition to the Motion to Stay and Compel Arbitration [Rec. Doc. 34] (the "Motion") filed by Baker Hughes Oilfield Operations, LLC and/or Baker Petrolite, LLC (jointly "Baker Hughes").[1] PetroTech shows that Baker Hughes's request to stay resolution of its claims against PetroTech in this Court pending resolution of the arbitration styled *Baker Hughes Oilfield Operations, LLC and Baker Petrolite, LLC v. Matthew O'Neal and PetroTech Solutions, LLC*, AAA No. 01-20-0007-3655 (the "Arbitration"),[2] should be denied because:

▸ **There is no legal basis for a mandatory stay**.

- Section 3 of the Federal Arbitration ("FAA") applies only to signatories to an arbitration agreement. There is no authority permitting it to be used by a signatory against a *non-signatory*, as Baker Hughes is attempting to do against PetroTech here.

- The *Waste Management* factors are inapplicable. That case concerned the opposite situation presented here. Regardless, the balance of the *Waste Management* factors weighs against granting a stay.

▸ **A discretionary stay is not warranted.**

- Baker Hughes cannot meet its "heavy burden" for justifying a discretionary stay. None of the relevant considerations for imposing a discretionary stay are present here. Further, equity and prejudice concerns militate against imposing a discretionary stay.

---

[1] The Court's Minute Entry seems to leave open the opportunity for further briefing on the entirety of the Motion. However, PetroTech's understanding, based on the Court's direction during the July 2 status conference, was that the supplemental briefing would be limited to the stay issue, and would not include further briefing on whether PetroTech could be compelled to arbitrate. PetroTech has confirmed that this is Baker Hughes's understanding as well.

PetroTech maintains that, because it is not a signatory to any arbitration agreement with Baker Hughes, it cannot be compelled to arbitrate Baker Hughes's counterclaims. Furthermore, the equitable estoppel exception. *See Bridas S.A.P.I.C. et al. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003). PetroTech is, of course, prepared to further brief this particular issue should the Court so order.

[2] Baker Hughes initiated the Arbitration on June 29, 2020, initially naming both O'Neal and PetroTech. Following the Court's July 2 conference, Baker Hughes dismissed PetroTech from the Arbitration without prejudice.

## ARGUMENT & AUTHORITIES

1. <u>**A Mandatory Stay Is Not Appropriate.**</u>

The Court should deny the Motion because there is no legal basis authorizing a mandatory stay of Baker Hughes' counterclaims against PetroTech. The starting point for the analysis is Section 3 of the FAA, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 ("Section 3").

### a.   There is no authority permitting Section 3 to be applied against a non-signatory.

The law in the Fifth Circuit is: "[Section 3] does not apply to those who are not contractually bound by the arbitration agreement." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir.1993)(quoting *Matter of Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989)). Here, PetroTech is not a party to the Employment Agreement, the operative contract that contains the arbitration clause in question; rather, the only parties to that contract are Matthew O'Neal ("O'Neal") and Baker Hughes. [3] Therefore, Section 3 does not apply to PetroTech.

To PetroTech's knowledge, there is no jurisprudence extending Section 3's to apply against non-signatories. Ironically, the firm employed by Baker Hughes in the captioned case made this very argument in *Jones Walker, LLP v. Petaquilla Minerals, Ltd.*, CIV.A. 14-1203, 2015 WL

---

[3] *See* Rec. Doc. 34-2 at p. 1 ("This Agreement is entered into by and between [O'Neal] and [Baker Hughes].").

3772670, at *4 (E.D. La. June 17, 2015)("Jones Walker argues that  . . . this Court has never permitted a signatory defendant to invoke the provision against a non-signatory plaintiff.").[4]

While courts have permitted a non-signatory to invoke Section 3's mandatory stay provision against a signatory under certain circumstances, the reverse is not also true. *Peak Pipe & Supply, LLC v. UMW Oilfield (L) International LTD* concerned the same fact pattern presented in this instance, a signatory attempting to invoke Section 3 against a non-signatory. *See* 3:18-CV-410-L, 2018 WL 6177268 (N.D. Tex. Nov. 27, 2018)(Lindsay, J.). The court there found:

> Moreover, it is unsettled in the Fifth Circuit whether [Section 3] may be invoked by a signatory against a nonsignatory. **The Fifth Circuit has stated that the provision does not apply to those who did not sign an arbitration agreement and are not otherwise bound by it**. [. . .]. A nonsignatory may, however, apply the mandatory stay provision against a signatory if certain factors are present. **[The signatory-applicant] has neither provided the court Fifth Circuit authority demonstrating the inverse is also true—that a signatory, in this case UMW, may apply the mandatory stay provision against a nonsignatory**; nor has it argued that the *Waste Management* factors apply in support of UMW's position. For these reasons, the court determines that UMW has not shown it is entitled to a mandatory stay of this action under 9 U.S.C. § 3 [. . .].

*Id.* at *2 (citations omitted)(emphasis added).[5] *Peak Pipe* thus confirms the paucity of support for Baker Hughes' position. Plainly stated, there is no caselaw in this Circuit (or, for that matter, in any other circuit based on PetroTech's research), applying Section 3's mandatory stay provision against non-signatories.[6]

---

[4] The court in *Jones Walker* went on to note: "Plaintiff has not provided the Court with—nor is the Court aware of—any cases within this Circuit in which a court has permitted a signatory defendant to invoke a mandatory stay against a nonsignatory plaintiff. In fact, the exact opposite appears to have occurred." 2015 WL 3772670, at *4.

[5] *See also Verity Sols., L.L.C. v. TASC, Inc.*, SA: 05-CA-548-XR, 2006 WL 8434130, at *3 (W.D. Tex. Aug. 17, 2006)(Rodriguez, J.)("…the [Fifth Circuit] has not enforced § 3 against parties who have not signed any arbitration agreement . . .").

[6] PetroTech is aware of *Broussard v. First Tower Loan, LLC*, 150 F.Supp.3d 709, 727 (E.D. La.2015), which could be read to have imposed a mandatory stay under Section 3 against a non-signatory intervenor; however, the Court subsequently clarified that it issued a discretionary, rather than mandatory, stay pending arbitration. *See Broussard v. First Tower Loan, LLC*, CV 15-1161, 2016 WL 879995 (E.D. La. Mar. 8, 2016).

In fact, the jurisprudence makes clear that Baker Hughes cannot do what it is attempting here. In *Vallejo v. Garda CL Southwest, Inc.*, Judge Rosenthal cited *Mendez v. Puerto Rican International Companies, Inc.,* 553 F.3d 709 (3d Cir. 2009), with approval of its holding that a defendant-signatory could not invoke Section 3 against a plaintiff-signatory. *See* CIV.A. H-12-0555, 2013 WL 6190175, at *5 (S.D. Tex. Nov. 26, 2013). *Mendez* was a multi-plaintiff employment discrimination case in which some, but not all, of the plaintiffs signed arbitration agreements with their employer. When the district court denied the emp0loyer's motion to compel arbitration against the non-signatory employees, the employer moved to stay their claims pending arbitration with the signatory employees. The Third Circuit denied the employer's stay request, reasoning that "**Section 3 was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court**." *Id.* (citing *Mendez*, 553 F.3d at 711) (emphasis added).

The rationale behind the above-cited authorities applies with even greater force here. PetroTech notes that these cases, which rejected requests to apply Section 3 against non-signatories, all involved applications for stays brought by *defendants*. The applicant in this instance, Baker Hughes, is a (counter)*plaintiff*. PetroTech did not initiate this action. PetroTech was brought into it under compulsion of Baker Hughes. It is one thing for a *defendant* to seek to stay an action brought by a *plaintiff* who signed an arbitration agreement; quite another for a *plaintiff* to file suit against a third party, litigate for a significant period of time, then demand that the third party wait to defend itself pending an arbitration with another party. If a request for a stay is foreclosed under the former scenario based on Section 3 and the foregoing jurisprudence, then, *a fortiori*, the latter scenario is unquestionably barred.[7]

---

[7] From PetroTech's review of the jurisprudence, it does not appear that what Baker Hughes is trying to do has ever even been attempted: a plaintiff-signatory attempting to invoke Section 3 against a defendant non-signatory.

b.     **The *Waste Management* factors do not apply**.

In *Waste Management., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir. 2004), the Fifth Circuit discussed application of Section 3 with respect to non-signatories. However—and this distinction is absolutely crucial—the court addressed the issue from the perspective of an "**application of a non-signatory**." *Id.* at 343 (emphasis added). In contrast, in the instant Motion, a <u>signatory</u> (Baker Hughes) is applying for a stay under Section 3. To fully appreciate the distinction between the *Waste Management* scenario, and the one presented here, a discussion of the underlying facts of *Waste Management* is in order.

Waste Management, for the benefit of its subsidiary, Residuous Industriales Multiqum, S.A. de C.V. ("RIMSA"), issued a guarantee and a letter of credit to secure RIMSA's obligations under a lease with a third party. *See id.* at 340. Later, Waste Management sold its shares in RIMSA to CGEA Onyx, S.A. ("Onyx") under a stock purchase agreement which included an arbitration clause. *See id.* Following that transaction, RIMSA defaulted on its lease obligations, prompting the third-party lessor to collect on Waste Management's letter of credit. *See id.*

Later, Onyx initiated an arbitration against Waste Management, alleging breaches of the stock purchase agreement. *See id.* at 340-41. Waste Management counterclaimed, seeking to recover the funds it advanced on the letter of credit on behalf of RIMSA. *See id.* at 341. Then, Waste Management filed suit in court against RIMSA to recoup its funds paid per the letter of credit, the same money at issue in its counterclaim against RIMSA in the arbitration. *See id.* RIMSA, which was not a party to the stock purchase agreement between Waste Management and Onyx, filed a motion to stay the litigation pending the arbitration. *See id.* The district court denied the motion. On appeal, however, the Fifth Circuit reversed and entered a stay. *See id.*

In reaching its conclusion, the Fifth Circuit set forth the following factors to be considered on a non-signatory's application for mandatory stay: 1) the arbitrated and litigated disputes must involve the same operative facts; (2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and (3) the litigation must have a 'critical impact' on the arbitration. *See id.* at 343. Again, however, PetroTech underscores that these are "factors for invoking a § 3 stay **on the application of a non-signatory**." *Id.* at 344.

Thus, the *Waste Management* factors were promulgated under the *opposite* situation presented to the Court in this instance. There, a non-signatory (RIMSA) sought to invoke Section 3 against a signatory (Waste Management). Here, a signatory, Baker Hughes, is attempting to use Section 3 against a non-signatory, PetroTech. As such, the *Waste Management* factors are inapplicable to the instant Motion.

> **c.     Even were the Court to apply the *Waste Management* factors, Baker Hughes would still not be entitled to a mandatory stay.**

The result is the same even should the Court disagree with PetroTech's analysis above and find that the *Waste Management* factors apply to this Motion. Baker Hughes remains unentitled to a stay of its claims against PetroTech because the *Waste Management* factors weigh against the Motion.

First, some background is in order. O'Neal was employed by Baker Hughes for over eight (8) years, holding various job titles and positions. He signed the Employment Agreement when he first hired, on May 11, 2011, which was never amended. Following his resignation, O'Neal accepted a significantly superior and altogether different position at PetroTech, Chief Operating Officer.

The Arbitration between O'Neal and Baker Hughes involves claims brought (or, that will be brought)[8] by both parties. O'Neal asserts that his Employment Agreement with Baker Hughes, particularly its non-competition, non-solicit, and choice of law provisions are invalid and unenforceable. [Rec. Doc. 1-1]. Conversely, Baker Hughes contends that the non-competition and non-solicitation provisions of the Employment Agreement are valid and that O'Neal violated same.[9] It also asserts that O'Neal:

- Breached the confidentiality/non-disclosure provision of his Employment Agreement and his agreement to abide by the confidentiality/non-disclosure provisions of Baker Hughes' Business Code of Conduct;

- Violated the Computer Fraud and Abuse Act by transferring Baker Hughes's files to an external storage device;

- Breached his duty of loyalty to Baker Hughes; and

- Is liable under the tort (or quasi-tort) theories of the Louisiana Uniform Trade Secrets Act, Louisiana Unfair Trade Practices Act, conversion and unjust enrichment.[10]

Broken down into categories, there are essentially two groups of claims in the Arbitration: (1) the enforceability of the non-competition and non-solicitation provisions of the Employment Agreement and whether O'Neal violated same; and (2) whether and to what extent for which O'Neal is liable for misappropriating Baker Hughes's confidential information.

In this litigation, Baker Hughes asserts that PetroTech violated trade secrets and unfair competition laws, and is liable for conversion, unjust enrichment, and "conspiracy." [Rec. Doc. 5]. The essence of Baker Hughes' counterclaims against PetroTech is that PetroTech (allegedly) used the confidential information (allegedly) misappropriated by O'Neal to its unfair advantage in competition with Baker Hughes. Notably, Baker Hughes does not argue that PetroTech is

---

[8] Currently, O'Neal's response is due to be filed in the Arbitration by August 3, 2020.
[9] **Ex. 1**, Amended Statement of Claims filed by Baker Hughes in the Arbitration, at p. 3.
[10] *Id.* at pp. 2-4.

contractually bound by, or in violation of, the Employment Agreement. Against this backdrop, PetroTech now addresses the *Waste Management* factors (assuming, without conceding, that they apply):

1. <u>*Same operative facts*</u>.

Under the first *Waste Management* factor, the arbitrated and litigated disputes "must involve" the same operative facts in order to impose a mandatory stay. *Waste Mgmt.*, 372 F.3d at 344. PetroTech acknowledges that there is some factual overlap between this litigation and the Arbitration, particularly with respect to Baker Hughes' allegation that O'Neal used Baker Hughes' information in connection with his new employment at PetroTech. Baker Hughes asserts many of its claims against both O'Neal and PetroTech in that regard. However, it also asserts discrete claims against one or the other, based on several areas of operative facts that do not overlap.

For instance, the negotiation, formation, and execution of O'Neal's Employment Agreement, as well as other facts that bear on the choice of law and enforceability analysis—such as the physical situs of O'Neal's office and employment region—are unique to the claims asserted between O'Neal and Baker Hughes in the Arbitration. Further, O'Neal's (alleged) transfer of Baker Hughes's data while employed at Baker Hughes is also ostensibly unique to its computer abuse claim and breach of the duty of loyalty claims against O'Neal.[11]

---

[11] Although this first factor weighs partially in favor of granting Baker Hughes's Motion, that alone is not dispositive. Courts have found that the litigated and arbitrated cases involved the same operative facts and, yet, have gone on to deny a motion to stay the litigated claims pending arbitration based on the second and third factors. *See e.g. Matthews v. Priority Energy Servs., LLC*, 6:15-CV-448-RWS-KNM, 2016 WL 7633990, at *3–6 (E.D. Tex. Dec. 2, 2016), *report and recommendation adopted*, 6:15-CV-448-RWS-KNM, 2017 WL 26080 (E.D. Tex. Jan. 3, 2017); *Vallejo*, 2013 WL 6190175, at *6 (same).

2.      *Inherently inseparable.*

The inherent inseparability of the claims asserted in the Arbitration and litigation, the second *Waste Management* factor, weighs against staying Baker Hughes's counterclaims against PetroTech. "Claims are inherently inseparable when they involve 'fundamentally ... one dispute.'" *Vallejo*, 2013 WL 6190175, at *6 (quoting *Waste Mgmt.*, 372 F.3d at 345). To illustrate, in *Waste Management*, the Fifth Circuit held that Waste Management's arbitrated and litigation claims against Onyx and RIMSA, respectively, were "inherently inseparable" because Waste Management was attempting to recover for the same payment it made pursuant to its letter of credit advanced on behalf of RIMSA to secure RIMSA's obligations. *See* 372 F.3d at 345. Crucial to  the court's determination was the fact Waste Management suffered "one alleged harm." *Id.*

Here, the claims at issue are not inherently inseparable because they entail multiple alleged harms. The enforceability and applicability of the Employment Agreement claims between O'Neal and PetroTech are distinct from the unfair trade and trade secrets claims. Moreover, even those latter categories of claims are separable as to O'Neal and PetroTech. What, if anything, O'Neal did with Baker Hughes's confidential information, individually, can be contrasted with what, if anything, PetroTech did with it, especially while O'Neal remained employed with Baker Hughes. As such, the claims in the Arbitration and this litigation are not inherently inseparable, and the second *Waste Management* factor militates against granting the Motion.

3.      *Critical impact on the Arbitration.*

The third *Waste Management* factor also supports PetroTech's position. This factor considers "not whether or how arbitration will influence the litigation, but whether the litigation will adversely affect the parties' right to arbitrate." *Vallejo*, 2013 WL 6190175, at *7 (citing *Waste Mgmt.,* 372 F.3d at 343). The litigation in *Waste Management*, for instance, would critically impact

the arbitration, as the ultimate issue was who, if anyone, should reimburse Waste Management for the payment on its letter of credit. *See* 372 F.3d at 345. As there was but one payment at issue in *Waste Management*, the court there was concerned about the potential for inconsistent rulings.

That same concern is not present here. Following denial of this Motion, PetroTech intends to file (at least partial) dispositive motions on the liability, causation, and damage elements of Baker Hughes's claims. Based on the extensive forensic discovery performed on the relevant electronic devices, several depositions, and other discovery to date, PetroTech is confident that it will demonstrate fatal frailties in Baker Hughes's claims against it. The Court's ruling on said motion(s) will not meaningfully impact Baker Hughes's ability to prosecute O'Neal in the Arbitration. Even if the Court outright dismisses PetroTech, Baker Hughes may still continue pursuing O'Neal for breaches of his Employment Agreement and other alleged wrongs. And, it is not inconsistent for the arbitrator to rule that O'Neal is liable and then for this Court to rule that PetroTech is not. The inter-dependency of the claims in the Arbitration and litigation, together with the risk of inconsistent results, is categorically less than was present in *Waste Management*. Accordingly, the third factor weighs against staying Baker Hughes's claims against PetroTech pending the Arbitration.

### d. PetroTech's position is consistent with the text of, and policy behind, the FAA.

"Both the text and purpose of the FAA support" limiting Section 3 to instances where it is applied only *against* signatories. *Vallejo*, 2013 WL 6190175, at *5. By its terms, Section 3 concerns "issues" referable to arbitration under "an agreement in writing" for arbitration. "Arbitration is a matter of contract; a party cannot be required to submit to arbitration unless it agreed in advance that the dispute would be arbitrated." *Id.* (citing *Smith v. Transp. Workers Union of Am., AFL–CIO Air Transp. Local 556*, 374 F.3d 372, 374 (5th Cir.2004)). "The FAA's

overarching purpose is to ensure the enforcement of arbitration agreements according to their terms . . ." *Id.* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333; 131 S. Ct. 1740, 1743; 179 L.Ed.2d 742 (2011)).

Section 3 furthers this purpose by preventing a party from litigating a claim that it has agreed to, or is otherwise bound to, arbitrate. *Id.* It "is drafted to fit the paradigm situation in which a motion for a stay pending arbitration occurs—a plaintiff brings suit on a claim involving an issue it is obligated to arbitrate under an agreement in writing with a defendant and that defendant seeks to stay the litigation pending arbitration." *Vallejo*, 2013 WL 6190175, at *5 (citing *Mendez,* 553 F.3d at 712). The FAA's goal of "ensuring judicial enforcement of privately made agreements to arbitrate," is not furthered by forcing a party that has not agreed to arbitrate to delay litigation of its claims. *See Cargill Ferrous Int'l v. M/V Anatoli*, 935 F. Supp. 833, 837 (E.D. La.1996)(citing *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 859 F.Supp. 669, 677 (S.D.N.Y.1994); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)). Simply put, Section 3 was not designed for the purpose intended by Baker Hughes. For this additional reason, the Motion should be denied.

### 2.    The Court Should Not Enter A Discretionary Stay.

Finally, while this Court certainly has power to issue a discretionary stay, it should decline to do so in this instance. The "heavy presumption" is that the Arbitration and the lawsuit should each proceed in its normal course. *Dean Witter*, 470 U.S. at 225. To overcome that presumption, Baker Hughes bears a "heavy burden." *Cargill*, 935 F. Supp. 837–38. Specifically, Baker Hughes must show "a clear case of hardship or inequity" to justify a discretionary stay.  *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Respectfully, it has not come close to meeting its burden.

If "allowing the litigation to continue will not disrupt, conflict with, or undermine the arbitration," then a discretionary stay is unwarranted. *See Vallejo*, 2013 WL 6190175, at *7. Furthermore, where only the "same operative facts" *Waste Management* factor supports a stay, and the other factors weigh against a stay, then a discretionary stay is inappropriate. *See e.g.*, *Matthews*, 2016 WL 7633990, at *6. Here, allowing the litigation to continue will not disrupt, conflict with, or undermine the Arbitration, and only the first *Waste Management* factor supports granting a stay. Thus, these considerations weigh against imposing a discretionary stay.

Courts also consider whether the arbitration will make the litigation more burdensome, costly, or time-consuming, and the extent to which the court can monitor and manage the litigation to minimize any negative effects from the fact of two proceedings. *See Vallejo*, 2013 WL 6190175, at *7. Here again, there is no indication that the Arbitration will make this litigation more difficult or expensive, and this Court is perfectly able to monitor and manage the case to minimize any negative effects of the parallel proceedings.

All of the relevant equitable considerations favor allowing Baker Hughes's claims against PetroTech to proceed. There is no identifiable hardship or inequity that would result to Baker Hughes by proceeding in both the Arbitration and litigation. Conversely, PetroTech will be tangibly prejudiced by delaying resolution of this case. Courts have found that such delays constitute prejudice to the party opposing a stay. *See e.g. Verity Sols*, 2006 WL 8434130, at *4.

Baker Hughes chose to bring PetroTech into this case, then litigated for *over seven months* before filing the instant Motion. In that time, Baker Hughes sought and obtained injunctive relief against PetroTech, engaged in forensic discovery of O'Neal's and PetroTech's electronic equipment, and took multiple depositions. From PetroTech's perspective, the lion's share of applicable discovery is complete. To force PetroTech to now wait to defend itself against Baker

12

Hughes' claims—indefinitely pending the Arbitration—would be grossly inequitable. Accordingly, PetroTech urges this Court to not enter a discretionary stay.

## CONCLUSION

There is no legal basis to impose a mandatory stay because Section 3 applies only to signatories to an arbitration agreement. The *Waste Management* jurisprudential exception and the three factors set forth therein do not apply here, as this case involves a signatory attempting to invoke Section 3 against a non-signatory, the opposite situation presented in *Waste Management*. Even applying those factors, a mandatory stay is unwarranted because the claims in the Arbitration and this litigation are not inherently inseparable and the litigation will not have a critical impact on the litigation. Lastly, the Court should not enter a discretionary stay because Baker Hughes has failed to show any inequity, hardship, or other consideration supporting such a stay, and, conversely, whereas PetroTech would be prejudiced by indefinitely waiting on resolution of the Arbitration.

For these and the foregoing reasons, the Court should deny the Motion.

Respectfully submitted,

**WIENER, WEISS & MADISON**
A Professional Corporation


By: */s/ Reid A. Jones*
  Marjorie L. Frazier  Bar Roll No. 32991
  Frank Spruiell  Bar Roll No. 1611
  Reid A. Jones  Bar Roll No. 34611

  330 Marshall Street, Suite 1000 (71101)
  P. O. Box 21990
  Shreveport, LA  71120-1990
  Telephone:  (318) 226-9100
  Facsimile:   (318) 424-5128

**ATTORNEYS FOR PETROTECH
SOLUTIONS, LLC**


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Western District of Louisiana by electronic case filing/case management and that a copy of the same was served on opposing counsel by electronic notification, to the following:

JOSEPH F. LAVIGNE
JACOB J. PRITT
***Jones Walker LLP***
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
Email: jlavigne@joneswalker.com

Shreveport, Louisiana, this 23RD day of July, 2020.

           */s/ Reid A. Jones*
           Reid A. Jones