UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MATTHEW O'NEAL, PETROTECH SOLUTIONS, LLC<br><br>  *Plaintiff/Counterclaim Defendants*,<br><br>  v.<br><br>BAKER HUGHES OILFIELD OPERATIONS, LLC AND BAKER PETROLITE, LLC,<br><br>  *Defendants/Counterclaim Plaintiffs*. | CASE NO.: 5:19-CV-01350<br><br>CHIEF JUDGE S. MAURICE HICKS<br><br>MAGISTRATE JUDGE HAYES |

## BAKER HUGHES'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendants/Counterclaim Plaintiffs Baker Hughes Oilfield Operations, LLC and Baker Petrolite, LLC (collectively, "Baker Hughes") respectfully submit this Supplemental Brief addressing whether, should the Court decide to compel arbitration as to Matthew O'Neal ("Mr. O'Neal") but not as to PetroTech Solutions, LLC ("PetroTech"), the Court should stay the litigation as to PetroTech pending resolution of Baker Hughes's dispute with Mr. O'Neal by an arbitrator.

### INTRODUCTION

Baker Hughes has already submitted briefing regarding why both Mr. O'Neal and PetroTech should be compelled to arbitration before the American Arbitration Association in Houston, Texas for a resolution of this dispute on the merits. However, in the event the Court only compels Mr. O'Neal to arbitrate, evaluation of Baker Hughes's claims against PetroTech on the merits, which would remain before this Court, should be stayed pending the conclusion of

1

arbitration between Baker Hughes and Mr. O'Neal. Judicial economy and federal public policy will best be served by staying evaluation of the claims against PetroTech. Baker Hughes's claims against PetroTech and Mr. O'Neal are inextricably intertwined, and concurrent evaluation of those claims in different fora could lead to an inconsistent result and impede or delay the parties' ability to finally and completely resolve this dispute.

## LAW AND ARGUMENT

In *Waste Management v. Residuos Industriales Multiquim, S.A.*, the Fifth Circuit clearly articulated a test for when a court must stay litigation with a non-signatory pending the outcome of an arbitration with a signatory to an arbitration agreement. 372 F.3d 339 (5th Cir. 2004).[1] Courts in the Fifth Circuit consider three factors when determining whether a stay of litigation pending the outcome of arbitration is mandatory as to a non-signatory: "[1] the similarity of operative facts, [2] the inseparability of claims, and [3] the effect of the litigation on the arbitration." *Id.* at 344. The *Waste Management* Court further noted that, "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Id.* at 343 (citing *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 541 (5th Cir. 2001)).[2]

---

[1] Section 3 of the Federal Arbitration Act provides that, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Fifth Circuit has articulated the *Waste Management* test to determine when Section 3's mandatory stay provision applies to non-signatories of an arbitration agreement.

[2] Even if the Court is not satisfied that a mandatory stay is required because all of the *Waste Management* factors have been established, the Court may, in its discretion, issue a stay "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Suzlon Infrastructure, Ltd. v. Pulk*, No. 09-2206, 2010 U.S. Dist. LEXIS 94413, at *11 (S.D. Tex. Sept. 10, 2010) (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009)).

In *Waste Management*, the Fifth Circuit reversed the District Court's refusal to grant a stay of litigation between non-signatories pending the outcome of arbitration between one of the parties and a third party with whom it had executed an arbitration agreement. *Id.* at 340. The plaintiff was party to an arbitration with a parent company and simultaneously sued its subsidiary in state court, which was removed to federal court. *Id.* at 341. In requiring the district court to stay the litigation, the Fifth Circuit rejected arguments based on different legal theories being put forth in the arbitration and litigation. *See id.* at 343-44. The Court also emphasized that the plaintiff was seeking recovery of the same damages in both arbitration and litigation in compensation for the same harm. *Id.* at 345. Finally, the Court expressed concern for the preservation of the integrity of the arbitration, staying the litigation to avoid a situation where the "arbitrator would necessarily be strongly influenced to follow the court's determination." *Id.*

Each of the *Waste Management* factors clearly entitles Baker Hughes to a mandatory stay of any litigation with PetroTech pending the conclusion of its arbitration with Mr. O'Neal. From the outset, Baker Hughes only seeks one form of relief, namely that it is compensated for the loss of revenue as a result of Mr. O'Neal misappropriating Baker Hughes's trade secrets and beaching his restrictive covenants to the benefit of himself and PetroTech. Baker Hughes is not seeking to recover separate sets of damages from Mr. O'Neal and PetroTech; its position is that the only true question to be decided by this Court after arbitration concludes is whether PetroTech is responsible for the damages Mr. O'Neal's actions in concert with it have caused Baker Hughes. A finding of fact by the arbitrator as to Mr. O'Neal's conduct will be directly relevant to analyzing PetroTech's involvement and potential liability.

Specifically, *first*, the operative facts in Baker Hughes's claims against PetroTech and Mr. O'Neal are identical. Baker Hughes has alleged that Mr. O'Neal misappropriated its confidential

3

information to benefit himself and PetroTech and has done so in breach of his restrictive covenant obligations to Baker Hughes, obligations with which PetroTech has interfered. For its trade secret claims against both PetroTech and Mr. O'Neal, Baker Hughes will be required to demonstrate that Mr. O'Neal misappropriated its confidential information and trade secrets and that he and PetroTech benefitted from that misappropriation. For claims related to Mr. O'Neal's employment agreement, Baker Hughes will have to establish that Mr. O'Neal's actions constituted a breach to recover against either Mr. O'Neal or PetroTech. In each instance, the facts that Baker Hughes will be required to put forth before this Court and an arbitrator are the same.

*Second*, the claims against PetroTech and Mr. O'Neal are inherently inseparable. From the outset of this litigation, Baker Hughes has maintained that PetroTech and Mr. O'Neal have engaged in concerted activity to deprive Baker Hughes of the value of its trade secrets and unjustly benefit by unfairly competing with Baker Hughes. Discovery will fully reveal the extent to which PetroTech encouraged this conduct, but any benefit Mr. O'Neal has or could have obtained from subsequent use of Baker Hughes's confidential information and trade secrets would necessarily benefit PetroTech as his new employer. Baker Hughes has no claims against PetroTech outside of the actions of Mr. O'Neal and PetroTech's position with respect to those actions. Additionally, Baker Hughes's claims related to Mr. O'Neal's employment agreement are also inextricably intertwined with its claims against PetroTech. Baker Hughes is alleging that Mr. O'Neal has breached his agreement by working for PetroTech and through actions he has taken on its behalf. Without accepting employment with PetroTech (or another competitor) Mr. O'Neal would not be in breach of his competitive restrictions.

*Third*, a stay of the litigation is necessary to protect the integrity of the arbitration, should only Mr. O'Neal be compelled to arbitrate. If litigation and arbitration proceed simultaneously, the

parties would be required to present the same, or at least nearly identical, facts and defenses in each forum at the same time. In addition to being an unnecessary burden on the parties, who would be subject to different sets of procedural rules in each forum while attempting to obtain the same discovery, this would impede Baker Hughes's ability to have an effective arbitration with Mr. O'Neal in accordance with the terms of his arbitration agreement. In the event the Court is simultaneously considering matters related to Mr. O'Neal's actions, as the *Waste Management* Court noted, the arbitrator "would necessarily be strongly influenced to follow the court's determination." *Id.* The potential conflict would only be exacerbated should the Court and the arbitrator reach different conclusions on the same issue of fact or law, thereby impeding the integrity and efficacy of the arbitration proceeding. Staying litigation pending the outcome of the arbitration is the only way to avoid this result.

Finally, PetroTech has raised concerns (and likely will through its supplemental briefing) that it would like to quickly dispense with this litigation. Specifically, PetroTech has argued that it should not have to "wait to seek justice on [Baker Hughes's] claims." (R. Doc. 40 at 6). However, the primary concern in determining whether to stay litigation pending the result of arbitration is the ability of the *signatories* to engage in a meaningful arbitration, not concerns related to potential harms to a non-signatory. *See id.* at 343.[3] Additionally, PetroTech will still be involved in the

---

[3] PetroTech may also argue that this Court should take the position of the Third Circuit in *Mendez*, which held that a *defendant* signatory cannot invoke Section 3 against a *plaintiff* non-signatory. *See Mendez v. Puerto Rican International Companies, Inc.*, 553 F.3d 709 (3d Cir. 2009). The Southern District of Texas applied *Mendez* along with the *Waste Management* factors to deny a motion to stay brought by a defendant in response to a Plaintiffs lawsuit while a related arbitration was pending between the plaintiff and a party with whom he had an arbitration agreement. *See Vallejo v. Garda CL Southwest, Inc.*, No. 12-0555, 2013 U.S. Dist. LEXIS 167740 (S.D. Tex. Nov. 26, 2013). This line of cases is distinguishable because, here, PetroTech is not a plaintiff and has brought no claims against Baker Hughes. PetroTech was only joined in this litigation when Baker Hughes sought injunctive relief against it, never intending to proceed against it on the merits in court absent a court order to the contrary, and then not until arbitration with Mr. O'Neal had concluded. Further, the *Vallejo* court, while noting what the Third Circuit had concluded on the issue, still applied the *Waste Management* factors to the case before it. Regardless of what position other circuits have taken, under Fifth Circuit law, if the *Waste Management* factors are satisfied, the Court must issue a mandatory stay of litigation pending the conclusion of arbitration between the signatories.

arbitration and litigation, regardless of when and in what order it occurs, for two reasons: first, it and its employees are integral witnesses in both cases; and second, it and O'Neal are represented by the same counsel, who, upon information and belief, are being paid by PetroTech. All in all, any potential harm to PetroTech is far outweighed by the importance of Baker Hughes and Mr. O'Neal arbitrating in accordance with the terms of their agreement.

## CONCLUSION

For the foregoing reasons, Baker Hughes respectfully requests that, should the Court compel arbitration only as to Mr. O'Neal and not as to PetroTech, the Court enter an Order staying the proceedings in this litigation as to PetroTech pending the conclusion of Baker Hughes's arbitration with Mr. O'Neal.

Respectfully submitted on July 23, 2020.

*/s/ Joseph F. Lavigne*
JOSEPH F. LAVIGNE (LA #28119)
JACOB J. PRITT (LA #38872)
***Jones Walker, LLP***
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
Email: jlavigne@joneswalker.com
Email: jpritt@joneswalker.com

***COUNSEL FOR DEFENDANTS BAKER HUGHES OILFIELD OPERATIONS, LLC AND BAKER PETROLITE, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Joseph F. Lavigne*